IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiffs, | ) | 8:04CR118 |
| | ) | |
| v. | ) | |
| | ) | |
| HUMBERTO RIVERA-MORENO, | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

The defendant, Humberto Rivera-Moreno, has filed a pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Filing 208. The defendant submitted an affidavit in support of his motion, with an attached letter written in Spanish. Filing 209. The defendant was given leave to submit an English translation of the letter. Filing 214. He timely filed a supplemental affidavit with an English version of the letter attached. Filing 215.

Liberally construing the allegations of defendant's motion, (Haines v. Kerner, 404 U.S. 519, 520-21 (1972)), his affidavits (filings 209 and 214), and his supporting brief (filing 211), the defendant claims his conviction and sentence must be vacated because:

1.    The court lacked subject matter jurisdiction over his case, (filing 208, p. 2);

2.    The following errors were committed at trial:
   •    Jermain Taylor was permitted to testify, which created a conflict of interest within the Federal Public Defender's Office, and necessitated the appointment of new counsel, Mark A. Weber, for the defendant, (filing 208, p. 3);

- The trial was scheduled too quickly for defendant's newly appointed counsel to adequately prepare, (filing 208, pp. 4, 6);

- The defendant was not afforded an adequate opportunity to testify, (filing 208, p. 12);

- Veronica Perales was permitted to testify, (filing 208, p. 14);

- A government witness was permitted to testify as an expert when the government had not adequately disclosed this testimony pursuant to Rule 16(G), (filing 208, p. 15); and

- Defendant's motion for judgment of acquittal for lack of sufficient evidence was denied, (filing 208, p.1).

3.   The following errors were committed at sentencing:

- The defendant was sentenced as a "leader" or "organizer" of a drug conspiracy without a jury finding on that issue, (filing 208, pp. 12, 13);

- The defendant's sentence was based, in part, on the type and amount of drug he was found responsible for without a jury finding on these issues, (filing 208, p. 13); and

- The sentence was excessive because a prison sentence exceeding 20 years for a non-violent drug crime undermines the public's respect for the law, and the defendant was not a "big drug dealer," and was vulnerable to engaging in criminal activity due to his illegal immigrant status, disadvantaged upbringing, and learning disabilities, (filing 208, p  12).

4.   The prosecutor committed misconduct by:

- amending the witness list several times to add informants who entered into cooperation agreements, (filing 208,  p. 3);

2

- allowing government witnesses to be housed together, which permitted these witnesses to violate Rule 615 of the Federal Rules of Evidence and fabricate their testimony,  (filing 208, p. 4, 7);

- bribing cooperating witnesses with promises of leniency in violation of U.S.C. 201)c)(2),  (filing 208, p. 8);

- failing to produce <u>Brady</u>, <u>Giglio</u>, and <u>Jencks</u> materials,  (filing 208,  p. 1, 9);

- coaching witnesses to lie, (filing 208, p. 11);

- failing to investigate the veracity of the testifying witness' statements, (filing 208, p. 14);

- deliberately creating a conflict of interest which required appointment of new defense counsel, (filing 208, p. 14); and

- failing to disclose expert testimony in violation of Rule 16(G), (filing 208, p. 15).

5.   Defendant's trial counsel provided ineffective assistance by arguing that the defendant was guilty during the closing statement,  (filing 208,  p. 9); and failing to:

- raise the Double Jeopardy Clause as a bar to conviction, (filing 208, p. 10)

- reassert the pretrial motions filed by defendant's prior counsel, (filing 208, p. 4);

- file a motion to suppress the testimony of the government's cooperating witnesses,  (filing 208, pp. 6, 8);

- challenge Taylor's testimony as previously barred by the Honorable Thomas M. Shanahan,  (filing 208,  p. 10);

3

- challenge testimony of informants who were promised shorter sentences or no prosecution exchange for providing false testimony against the defendant, (filing 208, pp. 6, 8 & 11);

- call Hector Martinez and Ruiz-Fuertes as witnesses at trial; (filing 208, pp. 7, 15);

- use a proper questioning form when examining the defendant, (filing 208, p. 10);

- prepare the defendant to testify, (filing 208, p. 12);

- prepare for trial, (filing 208, pp. 6, 8); and

- prepare for the sentencing hearing, (filing 208, p. 14).

6.  Defendant's appellate counsel provided ineffective assistance by:

- filing an <u>Anders</u> brief representing there were no meritorious issues for appeal, (filing 208, p. 5);

- failing to notify the defendant of the adverse Eighth Circuit ruling, thereby preventing him from filing a timely Petition for Writ of Certiorari, (filing 208, pp. 5, 15);

- failing to raise a sufficiency of evidence claim on appeal, (filing 208, p. 16); and

- failing to appeal his sentence as violating <u>United States v. Booker</u>, 543 U.S. 220 (2005), (filing 208, p. 16).

Upon review of the defendant's motion and supporting submissions, and the court's record, I conclude that the defendant's § 2255 motion must be denied.

4

# I.   BACKGROUND

On March 8, 2004, a criminal complaint was filed against Humberto Rivera-Moreno alleging that between February 1, 2004 and March 6, 2004, he knowingly and intentionally combined, conspired, confederated, and agreed to distribute and possess with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and § 841(b)(1).   Filing 1. Counsel from the Federal Public Defender's Office ("FPD") was promptly appointed, and Carlos Monzon, an attorney within the FPD's office at that time, entered an appearance for the defendant on March 12, 2004.  Filings 6 & 16.

On March 15, 2004, the defendant was indicted by the grand jury.  The indictment charged that between January 1, 2001 and March 15, 2004, the defendant and co-defendant Veronica Perales knowingly and intentionally combined and conspired to distribute and possess with intent to distribute 5 kilograms or more of cocaine, 500 grams or more of methamphetamine, and 50 grams or more of crack cocaine.  Filing 19.   A jury trial was set for May 10, 2004 before the Honorable Thomas M. Shanahan.  Filing 37.  The government moved to continue the trial citing scheduling conflicts, (filing 41), but the defendant objected to the motion.  Filing 45. Judge Shanahan ordered that the trial would commence on May 11, 2004.  Filing 53.

On May 3, 2004, a cooperating witness provided information indicating that Jermain Taylor may have corroborating information useful for the government's case against the defendant.  The government amended its witness list to include Mr. Taylor.  Filing 57.  When counsel for the government, Robert Cryne, was preparing to interview Taylor on May 7, 2004, he discovered that Taylor was represented by Karen Shanahan, an attorney with the FPD.  Filing 79, pp. 3-4.  A potential conflict of interest now existed because both the defendant and a trial witness were represented by attorneys in the FPD's office.

5

During a hearing before Judge Shanahan prior to the outset of trial, the court addressed the conflict of interest issue and the numerous motions in limine filed by the defendant. Regarding his potential conflict of interest, Mr. Monzon argued that since Taylor's testimony was merely cumulative, he should be precluded from testifying. Mr. Monzon argued that eliminating Taylor as a witness would, in turn, eliminate the conflict of interest, permit Mr. Monzon to represent the defendant, and allow the trial to go forward that day. Judge Shanahan initially agreed with this argument and ruled that Taylor would not be permitted to testify. Filing 88-1 (hearing transcript), pp. 11-13.

Judge Shanahan then heard argument on defendant's motions in limine. Filings 48, 50, 72, 73, 74, & 77. Filing 77 requested a ruling precluding the testimony of Jermaine Taylor, Marcell Bennett, Freeman Johnson, Tony Johnson, and Jeremy Walker because these witnesses were disclosed late. During the course of that argument, the government advised the court that Jencks materials for the government's cooperating witnesses had already been provided to defendant's counsel. Filing 88 (May 11, 2004 transcript), pp. 15-16. Judge Shanahan deferred any ruling on filing 77 during the May 11, 2004 hearing. Filing 88 (May 11, 2004 transcript), p. 28. Filing 74 moved to exclude the use of a tape and tape transcript of and any reference to a conversation between the defendant and Jose Alfredo Ruiz-Fuertes. Filing 74 was denied upon the government's assurance that it was not offering the actual tape of the conversation. Id. at pp. 35-36. Among other things, filing 73 raised a claim that Veronica Perales should not be permitted to testify regarding her delivery of cocaine to a person known as "E." That portion of filing 73 was denied. Id. at pp. 40-41. Filing 72 raised several issues, including a claim that Yanet Rodriguez should not be permitted to testify. That portion of filing 72 was denied. Id. at p. 41. Filing 50 moved to exclude rule 404(b) evidence as untimely disclosed. Judge Shanahan did not rule on filing 50 during the May 11, 2004 hearing. See filing 88 (May 11, 2004 transcript). Filing 48 moved to exclude the government's expert witnesses because the government's Rule 16(G) disclosures,

6

(see filings 47 & 57), provided inadequate detail.  Judge Shanahan noted that the identities of the expert witnesses and the topics of their anticipated testimony were disclosed, and that the defendant had been granted leave to depose these experts. Ultimately, filing 48 was resolved by the government's offer to provide a more detailed expert disclosure.  Id. at pp. 42-44, 53-56.  The hearing was briefly recessed.

Following the recess, Mr. Monzon again raised the conflict of interest issue. Mr. Monzon advised the court of a consideration not previously addressed; that prohibiting Taylor from testifying would effectively eliminate his ability to seek a Rule 35 sentence reduction.  Mr. Monzon argued that under such circumstances, a conflict of interest existed irrespective of whether Taylor was allowed to testify during the defendant's trial.  Upon further consideration, Judge Shanahan agreed and reversed his prior ruling.  Judge Shanahan held that Taylor would be permitted to testify.  Filing 88-2 (hearing transcript), pp. 57-62.  Accordingly, Mr. Monzon's motion to withdraw as counsel for the defendant was granted.  Filings 81 &  83.

The court then advised the defendant of his options and the need to delay the start of his trial.  The defendant expressed reluctance at having his trial delayed.  He advised the court that he wanted to retain counsel rather than have a new attorney appointed so that the trial could be held as soon as possible.  Filing 88-2 (hearing transcript), pp. 65-67.  The defendant was given until June 1, 2004 to retain counsel. He was advised that if no counsel entered an appearance on defendant's behalf on or before June 1, 2004, counsel would be appointed by the court.  Filing 88-2 (hearing transcript), pp. 67-68.

The defendant did not retain counsel.  On June 16, 2004, a hearing was conducted, and Mark A. Weber was appointed as counsel for the defendant.  Trial was set to commence before Judge Shanahan on August 16, 2004.   Filings 95 & 96.

On July 22, 2004, the government filed a superseding indictment alleging two additional counts against the defendant. Counts II and III of the superseding indictment alleged the defendant, at different time frames during the drug conspiracy alleged in Count I, used or possessed a firearm in furtherance of the conspiracy. Filing 105.

On August 2, 2004, the defendant's case was reassigned to the undersigned judge. Trial was rescheduled to begin on August 17, 2004. See filings 113 & 114. The government filed a motion to continue the trial to October 12-18, 2004, citing the unavailability of witnesses. Defendant's counsel did not oppose this motion. Filing 116. The trial was continued to September 27, 2004. Filings 119 & 126.

The defendant's four-day jury trial began on September 27, 2004. See docket entry 146; filings 177-180 (trial transcript). The trial proceeded faster than anticipated, but not at the insistence or request of the judge or either attorney. See filing 178, pp. 184-85, 318-19. At the outset of trial, and outside the presence of the jury, I ruled that the motions in limine filed by the defendant were denied. These motions were the same motions filed by Mr. Monzon and addressed by Judge Shanahan during the May 11, 2004 pretrial hearing. See filings 48, 50, 72, 73, 74 & 77.

The government called a total of 19 witnesses; 7 law enforcement officers, and 12 cooperating witnesses. The government had updated its witness list three times between July 28, 2004 and August 3, 2004, (filings 109, 111 & 115), but had not modified the list thereafter. Every witness who testified at the defendant's trial was disclosed no later than August 3, 2004. See filing 115. As set forth in the government's witness disclosure, Sergeant Mark Langan testified as an expert concerning "the illegal narcotics industry from sources of origin through local distribution, drug packaging, equipment, records and values, drug trafficking methodology, drug trafficker security methods and finance, drug dealer jargon and

practices, and related topics." Filing 115. Before Sergeant Langan was called as a witness, counsel for the defendant advised the court that he knew the content of this witness' anticipated testimony. Filing 179, p. 424.

The cooperating witnesses who testified were Yanet Rodriguez, Jose Alfredo Ruiz-Fuertes, Veronica Perales, Trinidad Cervantes, Jermain Taylor, Tony Johnson, Michael Jacobson, Jeremy Wayne Walker, Marcell Bennett, Kristopher Hatch, Noe Perales, and Ruben Hernandez. The cooperation agreements between the government and each of these witnesses were received into evidence, and each was examined concerning their potential motive to offer testimony on behalf of the government and against the defendant. See filing 178, pp. 142-44, 170-71 & ex. 9 (Rodriguez); pp. 175-76, 202-04 & ex. 8 (Ruiz-Fuertes); pp. 209-210, 222-224 & ex. 10 (Veronica Perales); pp. 224-227, 250-252 & ex. 11 (Cervantes); pp. 255-57, 264-65 & ex. 40 (Taylor); p. 266 & ex. 41 (Johnson); pp. 275, 290 & ex. 103 (Jacobson); pp. 291-293 & ex. 42 (Walker); pp. 295-97 & ex. 43 (Bennett); pp. 303-04, 316-17 & ex. 104 (Hatch); filing 179, pp. 324-25 & ex. 102 (Noe Perales); pp. 324-25 & ex. 102 (Guzman-Hernandez). During his opening and closing statements before the jury, defendant's counsel repeatedly stressed the importance of evaluating whether these witnesses were credible since each one was hoping for either a reduced sentence or no criminal prosecution if they provided testimony against the defendant. Filing 177, pp. 32-33; filing 180, pp. 498-503. Defendant's counsel never argued that the defendant was guilty of any criminal activity. See filing 180, pp. 497-503.

The government elicited testimony and offered physical evidence that the defendant, referred to throughout the trial by his street name, "Beto," was involved in the distribution and sale of substantial quantities of cocaine, methamphetamine, and crack cocaine, (filing 178, pp. 166, 178-193, 211-12, 232-41, 267, 282-83, 294, 301-02, 306-10; filing 179, pp. 328-29 347-58), and that he possessed a firearm during some of these transactions. Filing 178, pp. 197-98, 210, 245.

Near the close of the government's case, counsel for the defendant advised the court that the defendant intended to testify against the advice of counsel. The court granted defense counsel's request to permit the defendant to testify in the narrative, meaning the defendant "could simply say what he wanted to say as opposed to [counsel] trying to fashion that testimony," despite the "very clear risks to him implicating himself." Filing 179, pp. 424-25. The court advised the defendant of his rights and, consistent with the court's admonition, counsel for the defendant strongly urged the defendant not to testify at the trial and thoroughly explained the risks he faced by testifying. Filing 179, pp. 427-32.

The defendant responded to his counsel's advice by stating he needed to testify because the government's cooperating witnesses were lying. Filing 179, pp. 431-32. The defendant was called to the stand and examined by his attorney. Filing 179, p. 468. Rather than eliciting narrative testimony, defense counsel used a standard direct examination format. The questions asked afforded the defendant an opportunity to refute or undermine the testimony offered by the cooperating witnesses called by the government. Filing 179, pp. 466, 468-71.

On October 1, 2004, the jury entered a verdict of guilty on Counts I and III of the superseding indictment, and a verdict of not guilty on Count II. Filing 155. As to the drug conspiracy charge in Count I, the jury specifically found that the defendant was responsible for 5 kilograms or more of cocaine, 500 grams or more of methamphetamine, and 50 grams or more of crack cocaine, and that the defendant was an organizer and leader of the conspiracy. Filing 155.

The defendant's sentencing hearing was held on December 29, 2004. See docket entry 170; filing 184 (sentencing transcript). The jury's findings regarding drug quantities and defendant's role as an organizer and leader were used in determining the defendant's sentence. Filing 184 (sentencing transcript), pp. 2-7. Referencing the sentencing guidelines, I concluded that with respect to Count I of the

10

superseding indictment, the defendant's total offense level was 38, his criminal history category was III, and he was therefore subject to a sentence of 292 to 365 months in prison, five years of supervised release, and a fine of $25,000 to $4 million. As to Count III, I concluded the defendant was subject to a 60-month prison sentence to be served consecutive to the sentence on Count I.   Filing 184 (sentencing transcript), p. 8.

Counsel for the government and the defendant did not object to the court's determination of the potential sentence under the guidelines.   Counsel for the government requested a prison sentence in the middle of the sentencing range; defendant's counsel requested a sentence at the low end of the range.  The defendant was advised of the potential sentencing range and given an opportunity to address the court.  The defendant responded by stating he was innocent, his trial was "garbage," and his conviction was based on lies.  Filing 184 (sentencing transcript), pp. 10-11.

I sentenced the defendant to 292 months of imprisonment on Count I and 60 months of imprisonment on Count III, these terms to be served consecutively, followed by five years of supervised release.  Filing 184 (sentencing transcript), pp. 11-12.   The judgment was filed on January 6, 2005.  Filing 172.

With the assistance of his trial counsel, the defendant timely filed a notice of appeal and request for transcript.  Filings 173 & 174.  The Eighth Circuit appointed defendant's trial counsel, Mr. Weber, to represent the defendant on appeal.  Filing 183.   On appeal, the defendant argued that his sentence was unreasonable and excessive in violation of the Fifth and Sixth Amendments.   The defendant's conviction and sentence were affirmed on January 10, 2006.  The Eighth Circuit held:

> [T]he 292-month prison term for the drug conspiracy does not involve
> a Sixth Amendment violation under United States v. Booker, 543 U.S.
> 220, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005), because the district

court considered only the drug quantities and role adjustment found by the jury; and that the consecutive 60-month prison term for the firearm offense was the minimum mandated by 18 U.S.C. § 924(c)(1)(A)(i).

A sentence within the applicable Guidelines range is presumptively reasonable and the burden is on the appellant to rebut that presumption. United States v. Lincoln, 413 F.3d 716, 717-18 (8th Cir. 2005). We conclude that Rivera's sentence is not unreasonable: the district court correctly determined the Guidelines imprisonment range for the conspiracy count based on the jury's findings; chose a sentence at the bottom of that range; and indicated the sentence was based on the court's consideration of 18 U.S.C. § 3553(a)(2)(A) and (a)(2)(B). See Booker, 125 S.Ct. at 765-66 (standard of review; § 3553(a) will guide appellate courts in determining whether sentence is unreasonable); Lincoln, 413 F.3d at 717-18.

U.S. v. Rivera-Moreno,  161 Fed. Appx. 622, 623, 2006 WL 44159, *1 (8th Cir. January 10, 2006).

The defendant did not file a Petition for Writ of Certiorari. The transmittal letters from the Clerk of the Eighth Circuit Court of Appeals state a copy of that court's opinion and its mandate and judgment were sent to not only defendant's counsel, but to the defendant himself. See filings 190, 192 & 194.

The defendant's § 2255 motion was timely filed on February 5, 2007.   Clay v. U.S., 537 U.S. 522, 525 (2003)("For the purpose of starting the clock on § 2255's one-year limitation period, . . . a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction.").

12

## II.  STANDARD OF REVIEW

A motion to vacate, set aside, or correct a sentence may be based upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255.

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.  A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996).   An evidentiary hearing need not be held if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255.  See also Kingsberry v. United States, 202 F.3d 1030, 1033 (8th Cir. 2001)(affirming denial of § 2255 motion without an evidentiary hearing where defendant claimed his counsel provided erroneous plea advice).

## III.  ANALYSIS

The defendant's § 2255 motion seeks to vacate the defendant's conviction and sentence by challenging:   1) the court's subject matter jurisdiction, 2) the effectiveness of his trial counsel, 3) the prosecutor's trial conduct and the judge's trial and sentencing decisions, and 4) the effectiveness of his appellate counsel.  These claims will be addressed in turn.

13

1.    <u>Lack of Subject Matter Jurisdiction</u>.

The defendant claims this court lacked subject matter jurisdiction to enter a judgment of conviction against him.  A federal court "'has jurisdiction of all crimes cognizable under the authority of the United States.'"  <u>U.S. v. Cotton</u>, 535 U.S. 625, 631 (2002)(quoting <u>Lamar v. United States</u>, 240 U.S. 60, 65 (1916)).  "[N]othing can be clearer than that the [federal] district court . . . acts equally within its jurisdiction whether it decides a man to be guilty or innocent under the criminal law, and whether its decision is right or wrong.  The objection that the indictment does not charge a crime against the United States goes only to the merits of the case." <u>Keto v. U.S.</u>, 189 F.2d 247, 250 (8th Cir. 1951)(denying a defendant's motion to vacate a criminal conviction for bank robbery though the indictment itself was defective).

The superseding indictment against the defendant alleges he violated federal law by conspiring to distribute and possess with intent to distribute illegal drugs, and by using a firearm during the commission of drug-related crimes.  See filing 105 (citing 21 U.S.C. 841 & 846 and 18 U.S.C. 924(c)).  The jury found that federal law was violated.  There is no merit to defendant's claim that this court lacked subject matter jurisdiction to adjudicate this case.

2.    <u>Ineffective Assistance of Counsel at Trial</u>.

The defendant has raised several claims of ineffective assistance of trial counsel.  A claim of ineffective assistance of counsel is reviewed under the two-pronged standard of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  The defendant must demonstrate that counsel's performance was deficient, and that such deficient performance prejudiced his defense.  <u>Id</u>. at 687; <u>Bryson v. United States</u>, 268 F.3d 560 (8th Cir. 2001); <u>Williamson v. Jones</u>, 936 F.2d 1000, 1004 (8th Cir. 1991).  The first prong requires showing that defendant's attorney failed to provide reasonably effective assistance.  <u>Strickland</u>, 466 U.S. at 687-88.  In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance." Id. at 689. The second prong requires the defendant to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; Hubbeling v. United States, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. United States v. Apfel, 97 F.3d at 1076 (quoting Cheek v. United States, 858 F.2d 1330, 1336 (8th Cir. 1988)).

The defendant claims his trial counsel was ineffective both prior to trial and during his trial and sentencing, and that his counsel's lack of diligence and effort caused his conviction and lengthened his sentence. As the following discusses, these claims lack merit.

      a.      Counsel's Pretrial Conduct.

      i.      Failing to raise the Double Jeopardy Clause as a basis for dismissal.

Liberally construing the defendant's motion, the defendant claims he was denied the right to challenge the government's indictment and his conviction under the Double Jeopardy Clause due to his attorney's lack of preparation and self-motivation. He claims he was not allowed to "show the jury that he was being charge[d] twice for a crime that was dismiss[ed] by the State." Filing 208, p. 10.

The federal and state governments are separate sovereigns. "While one sovereign may not place an individual in jeopardy twice for the same acts, a subsequent prosecution by a separate sovereign does not violate the Constitution." U.S. v. Vinson, 414 F.3d 924, 928-29 (8th Cir. 2005). When a defendant in a single act violates the peace and dignity of two sovereigns by breaking the laws of each, he has committed two distinct offenses and can be prosecuted and punished for both.

15

Heath v. Alabama, 474 U.S. 82, 89 (1985).   Accordingly, even assuming the defendant had been permitted to offer evidence that drug conspiracy charges were filed against him by the state and then dismissed on the merits, his later drug conspiracy trial and conviction in this federal forum was not barred by the Double Jeopardy Clause.

The defendant's federal conviction cannot be vacated under the Double Jeopardy Clause.  Since the defendant's Double Jeopardy argument lacks merit, any claim of ineffective assistance of counsel for failing to raise this argument at trial or on appeal must be denied.

      ii.     Failing to reassert motions in limine.

The defendant claims his trial counsel was ineffective in that he failed to reassert the pretrial motions in limine initially filed by Mr. Monzon.  The motions at issue relate to the admissibility of expert testimony and the testimony of the government's cooperating witnesses.  See filing 208, pp. 4, 6, 8.  As to these issues, Judge Shanahan had deferred ruling on whether certain witnesses were disclosed too late to testify at a May 11, 2004 trial, and with respect to the remaining issues raised by defendant's § 2255 motion, had either denied or resolved defendant's motions.  See filing 88 (May 11, 2004 transcript).  I denied these same motions at the outset of defendant's trial on September 27, 2004.  Filing 177, p. 2.

The defendant specifically claims his counsel failed to review the transcript of the proceedings before Judge Shanahan, and accordingly failed to challenge Jermain Taylor as a potential witness whose testimony was barred by Judge Shanahan.  Filing 208,  p. 10.  The defendant's memory or interpretation of Judge Shanahan's May 11, 2004 ruling is incorrect.  Although Judge Shanahan initially decided Taylor could not testify, the transcript establishes that he later reversed this decision and held that the

16

government was permitted to call Taylor to testify at trial.  Filing 88-2 (hearing transcript), pp. 57-62.

There is no factual basis for, and no showing of prejudice related to, defendant's claim that his counsel was ineffective for failing to raise or re-raise the pretrial motions filed by his prior counsel.  These claims of ineffective assistance of counsel must be denied.  See, Kramer v. Kemna, 21 F.3d 305, 308 (8th Cir. 1994)(counsel's alleged failure to conduct discovery, investigate facts or perform legal research cannot be basis for ineffective assistance of counsel claim absent showing that these alleged deficiencies changed the result); Bruns v. Thalacker, 973 F.2d 625, 629 (8th Cir. 1992)(alleged ineffective assistance of counsel for failing to file adequate pre-trial motions, object to evidence at trial, or adequately cross-examine witnesses could not be basis post-conviction relief absent showing of actual prejudice); Guinan v. Armontrout, 909 F.2d 1224 (8th Cir. 1990)(trial counsel was not constitutionally ineffective on theory of not adequately investigating and supporting pretrial motion for mental evaluation).

b.    Counsel's Trial Conduct.

The defendant also claims his counsel failed to diligently represent his interests at trial.  These claims are directly refuted by the record.

Although the defendant claims his counsel argued defendant was guilty during the closing statement, (filing 208, p. 9), the transcript of the closing statement establishes that no such argument was made.  See filing 180 (trial transcript), pp. 497-503.

The defendant claims his counsel failed to challenge the credibility of the government's cooperating witnesses by failing to elicit testimony revealing their incentive to lie in exchange for a shorter sentence or dismissed charges.  Filing 208,

pp. 6, 8 & 11. Contrary to defendant's claim, each witness was examined concerning the terms of their cooperation agreement, and defense counsel strenuously argued in his closing statement that these witnesses were not credible. See filing 178, pp. 142-44, 170-71 & ex. 9 (Rodriguez); pp. 175-76, 202-04 & ex. 8 (Ruiz-Fuertes); pp. 209-210, 222-224 & ex. 10 (Veronica Perales); pp. 224-227, 250-252 & ex. 11 (Cervantes); pp. 255-57, 264-65 & ex. 40 (Taylor); p. 266 & ex. 41 (Johnson); pp. 275, 290 & ex. 103 (Jacobson); pp. 291-293 & ex. 42 (Walker); pp. 295-97 & ex. 43 (Bennett); pp. 303-04, 316-17 & ex. 104 (Hatch); filing 179, pp. 324-25 & ex. 102 (Noe Perales); pp. 324-25 & ex. 102 (Guzman-Hernandez); filing 180, 498-503 (closing statement).

The defendant claims his counsel failed to call Ruiz-Fuertes as a witness and that, had he done so, this witness' testimony would have convinced the jury that the defendant was not guilty. Filing 208, p. 7. Ruiz-Fuertes testified at the trial as a cooperating witness for the government, and was cross-examined by the defendant's counsel. Filing 178, pp. 174-207. He later wrote a letter to Veronica Perales which, according to the defendant, supports defendant's claim that the cooperating witnesses fabricated testimony against the defendant. The letter does not support defendant's argument. Ruiz-Fuertes' letter is an apology letter to Veronica Perales, defendant's wife. Ruiz-Fuertes explains that he attempted to conceal information while appearing to cooperate with the government in an effort to keep his wife, Yanet Rodriguez, and Veronica Perales from being convicted, and that he cannot understand why the defendant did not, likewise, protect his wife from being accused of helping her husband distribute and sell drugs. The letter, read as a whole, implicates rather than exonerates the defendant's role in the crimes alleged. See e.g. filing 215 (May 17, 2005 letter)(stating "but don't worry[,] of you [Veronica Perales] I didn't say anything because I only spoke to Beto at a restaurant and other places.").

The defendant argues that his counsel should have called Hector Martinez as a witness. Filing 208, p. 15. Paul Orduna, a DEA Special Agent, testified that

18

Martinez, an alleged co-conspirator, and Jose Ruiz lived at 2124 South 42nd Street in Omaha, Nebraska, that this home was searched pursuant to a warrant, and that guns were found during that search. On cross-examination by defendant's counsel, Special Agent Orduna acknowledged that the defendant's DNA was not present on the firearms seized from the South 42nd Street home, and the defendant was not implicated with respect to possessing these weapons. Filing 177, p. 86; filing 178, pp. 138-39. Having obtained this admission from Special Agent Orduna, Mr. Weber wisely chose not to call Martinez as a witness. Calling Martinez to testify, and exposing him to government cross-examination, would have raised a serious risk that Martinez would further help government's case while adding nothing helpful to the defendant's case. Counsel's conduct with respect to Martinez' testimony was certainly "reasonable professional assistance." Strickland, 466 U.S. at 689.

The defendant claims his counsel used an improper, narrative form of questioning when examining the defendant, and failed to prepare the defendant to testify. Filing 208, pp. 10, 12. The record establishes that the defendant testified against the advice of counsel. Counsel's dialogue with the defendant is part of the court record and reveals that the defendant was reminded of what topics were relevant and what topics would be excluded by the judge. The defendant stated he needed to testify so the jury would know that the government's cooperating witnesses had lied. After conversing with the defendant, and although given leave to question the defendant in the narrative, defense counsel examined the defendant using a standard question and answer method. These questions were tailored to give the defendant an opportunity to refute the claims of the government's witnesses without venturing into wholly irrelevant topics that likely would have harmed the defendant's case. Filing 179, pp. 431-32, 466-71. The record establishes that to the extent he reasonably could, defendant's counsel prepared the defendant to testify, and he questioned the defendant in a manner that preserved defendant's right to testify while protecting him from further incrimination.

19

Finally, the defendant claims his counsel failed to prepare for his trial and sentencing hearing.  Filing 208,  pp. 6, 8, 14.  As evidenced by counsel's arguments to the court and jury, his cross-examination of witnesses, and his examination of the defendant, Mr. Weber was well-prepared for this trial.  Defendant's claim that his counsel was unprepared at the sentencing hearing is likewise erroneous.  A § 2255 claim raising conclusory allegations unsupported by specifics or based on allegations that, in the face of the record, are not credible, is subject to summary dismissal without an evidentiary hearing.  Blackledge v. Allison, 431 U.S. 63, 74 (1977).  See also, Bryson, 268 F.3d at 560 (denying ineffective assistance of counsel claims that were "brief, conclusory and fail[ed] to cite to the record"); United States v. Robinson, 64 F.3d 403, 405 (8th Cir. 1995) (movant's allegations of attorney coercion too vague and conclusory to warrant evidentiary hearing); Voytik v. U.S., 778 F.2d 1306, 1308 (8th Cir. 1985) (vague allegations of impropriety and coercion to induce a guilty plea, including the promise of a shorter sentence, were insufficient especially in light of defendant's statements at the plea hearing).

### 3.   Alleged Errors and Misconduct by the Trial Judge and Prosecutor.

A section 2255 motion is not a substitute for direct appeal.  Poor Thunder v. United States, 810 F.2d 817, 823 (8th Cir. 1987).  Claims that could have been presented on direct appeal will not be considered in a section 2255 proceeding absent a showing of cause for the failure to raise the issue and actual prejudice resulting from that failure.  U.S. v. Moss, 252 F.3d 993, 1001 (8th Cir. 2001); Reid v. United States, 976 F.2d 446, 447-48 (8th Cir. 1992).  Specifically, defendant must show that some objective factor external to the defense prevented him from raising his defaulted claims.  Murray v. Carrier, 477 U.S. 478, 488 (1986).

Defendant alleges the court erroneously allowed certain government witnesses to testify, limited the defendant's right to a fair trial by accelerating the scheduling and tempo of the trial, denied the defendant's motion for judgment of acquittal at the

20

close of the government's case, and considered unsupported conclusions while failing to consider relevant facts in determining the defendant's sentence. The defendant further alleges the prosecutor deliberately created a conflict of interest so that the defendant would need new counsel, untimely revealed or concealed information from the defendant's counsel, and bribed witnesses and suborned perjury to secure the defendant's conviction. These allegations of trial error, alleged prosecutorial misconduct, and sentencing error are not based on newly discovered evidence, but on circumstances that were evident to the defendant during the trial and sentencing. As such, these issues could have been raised on direct appeal, and cannot be raised by a motion for post-conviction relief under 28 U.S.C. § 2255. See, U.S. v. Moss, 252 F.3d 993 (8th Cir. 2001)(challenges to sentencing must be raised on direct appeal and no post-conviction relief available); U.S. v. Little, 608 F.2d 296, 300 (8th Cir. 1979)(claims of prosecutorial misconduct known to the defendant at the time of trial must be raised by direct appeal and provide no basis for post-conviction relief); U. S. v. Morton, 591 F.2d 483 (8th Cir. 1979)(admissibility of co-conspirator testimony, challenged as hearsay, is a matter of direct appeal); Cardarella v. U.S., 351 F.2d 443 (8th Cir. 1965)(question of sufficiency of evidence or involving errors either of law or of fact must be raised by timely appeal from sentence, and not by motion attacking sentence); Glouser v. U. S., 296 F.2d 853 (8th Cir. 1961)(alleged errors relating to admissibility of evidence are reviewable only on direct appeal, and are not cognizable on a motion to vacate a sentence).

       4.     Ineffective Assistance of Counsel on Appeal.

The defendant claims he was denied effective assistance of appellate counsel. Post-conviction claims alleging ineffective assistance of counsel on appeal are evaluated under the two-prong standard set forth in Strickland. Reagan v. Norris, 279 F.3d 651, 656 (8th Cir. 2002); Kitt v. Clarke 931 F.2d 1246, 1249 (8th Cir. 1991).

Construing the defendant's motion liberally, defendant may be claiming his appellate counsel was ineffective in that he failed to appeal the alleged and previously identified claims of prosecutorial misconduct, and  trial and sentencing errors. The defendant also specifically claims his  appellate representation was deficient in that Mr. Weber filed an <u>Anders</u> brief, and failed to notify the defendant of Eighth Circuit's adverse decision, thus depriving him of the right to file a timely Petition for Writ of Certiorari.  These claims lack merit.

       a.     Prosecutorial Misconduct.

       i.     Alleged withholding of <u>Brady</u>, <u>Giglio</u>, and <u>Jencks</u> materials.

Under <u>Brady v. Maryland</u>, 373 U.S. 83,  87 (1963), the prosecution must disclose exculpatory evidence in its possession.  "[S]uppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  <u>Brady</u>, 373 U.S. at  87.  The government must also disclose any alleged promises of leniency made to key witnesses in exchange for their testimony. <u>Giglio v. U.S</u>.  405 U.S. 150 (1972).  <u>Brady</u> and <u>Giglio</u> disclosures are required irrespective of whether the defense requests the evidence. See <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985); <u>Odem v. Hopkins</u>, 192 F.3d 772, 776 (8th Cir. 1999).

As previously discussed, the cooperation agreements for every cooperating witness were disclosed at trial and entered into evidence, and each witness was questioned regarding these agreements.  There is no factual basis for defendant's claim that the government failed to disclose <u>Giglio</u> evidence.

A defendant requesting post-conviction relief for an alleged violation of <u>Brady</u> must show that the prosecution withheld evidence, that this evidence was favorable

to the defense and that it was material to the defendant's case.  Lindhorst v. United States, 658 F.2d 598, 605 (8th Cir. 1981); U.S. v. Smith, 538 F.2d 1332 (8th Cir. 1976). The defendant has made no showing of what, if any, evidence the United States failed to disclose and therefore, cannot show any prejudice by non-disclosure in violation of the due process rights set forth in Brady. "Mere speculation that a government file may contain Brady material is not sufficient to require a remand . . ., much less reversal for a new trial."  United States v. Pou, 953 F.2d 363, 366-67 (8th Cir. 1992).

Finally, the title of defendant's motion states the prosecutors withheld Jencks materials (though the body of the motion and brief discusses alleged concealment of Brady and Giglio evidence). Under the Jencks Act, 18 U.S.C. § 3500, "[i]n any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." "[A]lthough in many cases the government freely discloses Jencks Act material to the defense in advance of trial, . . . the government may not be required to do so."  United States v. Wilson, 102 F.3d 968, 971-2 (8th Cir. 1996)(citing United States v. White, 750 F.2d 726, 729 (8th Cir.1984).

Assuming the defendant intended to raise a Jencks Act claim, the facts of record do not support his claim. The record reveals that the government disclosed Jencks materials for the cooperating witnesses to the defendant's counsel in advance of the May 11, 2004 trial setting.  Filing 88, pp. 15-16.

Since there is no support for defendant's claim that the government withheld Brady, Giglio, or Jencks materials, the defendant cannot claim his counsel was ineffective in failing to raise these claims on appeal.  Kitt v. Clarke, 931 F.2d 1246, 1250 (8th Cir. 1991)(where the defendant's claims lacked factual and legal merit, appellate counsel's failure to raise these arguments on appeal could not have

prejudiced the defendant and cannot constitute ineffective assistance of appellate counsel).

      ii.      Bribing witnesses and suborning perjury.

The defendant claims the government bribed the cooperating witnesses with promises of leniency in violation of 18 U.S.C. § 201(c)(2), and coached them to lie, or at the very least, failed to investigate the veracity of their statements before calling them to testify. Filing 208, pp. 8, 11, 14. Section 201(c)(2) makes it illegal for "whoever" to give anything of value to another for testimony under oath at trial. However, § 201(c)(2) "does not sweep so broadly as to prevent prosecutors from offering leniency to an individual in exchange for truthful testimony." U.S. v. Brown, 183 F.3d 740, 742 (8th Cir. 1999). Plea and cooperation agreements are not considered unlawful "bribes." Id.

The knowing use of perjured testimony is cognizable under § 2255, but the defendant bears the burden of proving the government knew it was false at the time it was used. Crimson v. U.S., 510 F.2d 356, 357 (8th Cir. 1975). This burden cannot be met with unsupported accusations. There is no evidence that the witnesses called by the government lied, were coached to lie, violated the court's sequestration order, or jointly fabricated their testimony while housed by the government awaiting trial. Despite examination and cross-examination related to each witness' possible motive to testify, the jury apparently determined that all, or at least part, of the cooperating witness' testimony was credible. More importantly, "[t]here is not the slightest suggestion that the United States Attorney knew at the time the testimony was elicited that it was tainted with perjury. In the absence of this essential element, the contention is wholly insufficient to vitiate the sentence by collateral attack." Sykes v. U.S., 341 F.2d 104, 105 (8th Cir. 1965).

The defendant has not adequately raised a claim that government misconduct resulted in bribed or perjured testimony.  There is no basis for claiming his appellate counsel was inadequate for failing to raise this issue on appeal.

      iii.     Disclosure of witnesses.

The defendant claims the government failed to adequately disclose its expert witness, and amended its witness list too often by adding more cooperating witnesses. Filing 208, pp. 3, 15. There is no factual basis for these claims of alleged prosecutorial misconduct.  Defendant's counsel acknowledged that he knew the content of testimony to be offered by the government's expert before that witness took the stand.  Filing 179, p. 424.  As to the listing of cooperative witnesses, all witnesses called to testify were disclosed more than six weeks before the trial began.  See filing 115.  There is no valid basis for claiming the government concealed witnesses or expert disclosures.  The defendant cannot show he was prejudiced by his appellate counsel's failure to appeal that issue.

      iv.     Creating a conflict of interest.

The defendant argues the government improperly created a conflict of interest by identifying Jermain Taylor as a witness.  As reflected by his trial testimony, Jermain Taylor had information relevant to the government's case against the defendant. Prior to the trial, and consistent with Rule 44 of the Federal Rules of Criminal Procedure, the government advised the court that it may call Taylor, and that the FPD's office had a potential conflict in representing both Taylor and the defendant. See Fed. R. Crim. P. 44(c)(1)(B).  The court determined the FPD's office could not continue to represent the defendant.  These circumstances do not raise a valid basis for appeal, especially where the defendant has failed to show any prejudice arising from the appointment of new counsel.  Accordingly,  the defendant

cannot show he was prejudiced by his appellate counsel's failure to appeal the conflict of interest issue

      b.     Trial and Sentencing Errors.

The alleged trial errors raised by the defendant either parallel many of the allegations of prosecutorial misconduct already addressed, or are wholly unsupported by the record.  Without belaboring the discussion, the defendant has no valid claim that the government's expert witnesses, Jermain Taylor, or the other cooperating witnesses, including co-defendant Veronica Perales, should not have been allowed to testify.  Contrary to defendant's claim, (see filing 208, p. 216), the record shows the government presented ample evidence in support of defendant's conviction. The factual record refutes any claim that the court did not allow sufficient time for defense counsel to prepare for trial, or that the court limited the trial time or hurried the presentation of evidence.  See filing 208, pp. 4, 6.  Finally, contrary to the defendant's allegations, the court did not limit the defendant's opportunity to offer relevant testimony in his own defense.  Filing 208, p. 12.  The defendant cannot show he was prejudiced by his appellate counsel's failure to raise these unsupported issues on direct appeal.

The sentencing errors raised by the defendant are unsupported by the record, and represent an improper attempt to relitigate matters decided on direct appeal.  The defendant claims he was sentenced in violation United States v. Booker, 543 U.S. 220 (2005), because the jury made no determination of whether he was a "leader" or "organizer" of a drug conspiracy, or the type and quantity of drugs for which he was responsible.  Filing 208, pp. 12, 13.  The defendant is mistaken.  The jury made these findings, and the court relied on these jury findings in sentencing the defendant.  See filing 155.

The defendant also claims his sentence was unreasonable because he was not a "big drug dealer," is a disadvantage illegal immigrant, and has learning disabilities, and because the public's confidence in the criminal justice system is eroded when those who commit only non-violent drug crimes are sentenced to more than 20 years in prison.

The defendant appealed his sentence as excessive and in violation of <u>Booker</u>. The Eighth Circuit affirmed defendant's sentence. <u>U.S. v. Rivera-Moreno</u>, 161 Fed. Appx. 622, 623, 2006 WL 44159, *1 (8th Cir. January 10, 2006). A claim raised and decided on direct appeal cannot be relitigated through a § 2255 motion. <u>Bear Stops v. United States</u>, 339 F.3d 777, 780 (8th Cir. 2003); <u>United States v. Wiley</u>, 245 F.3d 750 (8th Cir. 2001); <u>Dall v. United States</u>, 957 F.2d 571, 573 (8th Cir. 1992); <u>United States v. Holtzen</u>, 718 F.2d 876, 878 (8th Cir. 1983). The defendant's § 2255 claims alleging sentencing errors must be denied.

c.    Filing an <u>Anders</u> Brief.

The defendant claims his counsel was ineffective in that he filed an <u>Anders</u> brief representing there were no valid issues for appeal. Defendant's claim is without merit; no <u>Anders</u> brief was filed and the Eighth Circuit never entered an <u>Anders</u> ruling. Mr. Weber represented the defendant throughout the course of his appeal. See <u>U.S. v. Rivera-Moreno</u>, 161 Fed.Appx. 622, 2006 WL 44159 (8th Cir. 2006), and accompanying Eighth Circuit Docket, Case No. 05-1236 as published on Westlaw.

d.    Failing to Notify the Defendant of the Eighth Circuit's Ruling.

The defendant claims he was denied the opportunity to timely file a Petition for Writ of Certiorari because his counsel failed to notify him of the Eighth Circuit's adverse ruling. The court's record indicates the clerk of the Eighth Circuit sent transmittal letters directly to the defendant advising him that a decision, judgment,

and mandate had been entered.  There is nothing of record indicating the defendant told Mr. Weber to file a Petition for Writ of Certiorari, and no evidence Mr. Weber was appointed or agreed to do so.

Moreover, the defendant cannot show any prejudice relating to his alleged inability to file for a Supreme Court review of his conviction and sentence.  Supreme Court review is discretionary, not an appeal of right, and Petitions for Writ of Certiorari are rarely granted.  Based on the evidence and issues of record, it is highly unlikely a Petition for Writ of Certiorari would have been granted for this case. Therefore, any suggestion that the defendant's conviction is constitutionally infirm because he was not notified of the appellate ruling, and that he  was therefore denied his right to file a Petition for Writ of Certiorari, is "totally devoid of merit."  See United States v. Lauga, 762 F.2d 1288, 1291 (5th Cir. 1985).  See also Brown v. U.S., 2006 WL 3626983, *2 (D. Minn. 2006); Cline v. U.S., 2005 WL 2386233, *7 (E.D. Ky. 2005).  To find otherwise "would open the door for numerous appellants with meritless constitutional claims to seek reversal merely by having their counsel fail to file for a Writ of Certiorari."  U.S. v. Lena, 670 F.Supp. 605, 613 (W.D. Pa. 1987).

IT IS THEREFORE ORDERED:

1.    Defendant's motion to conduct discovery and expand the record, filing 212, is denied.

2.    Defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, filing 208, is denied.

3.    Judgment dismissing this matter with prejudice will be entered by separate document.

June 11, 2007.                            BY THE COURT

                                          s/ Richard G. Kopf
                                          United States District Judge

28